UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHRISTOPHER MOORE,

                           Plaintiff,

        -against-

CITY OF NEW YORK, individually and in their official
capacities, DET. ERICK M. PARKS, DET. MARCELO
LUC, DET. ELENA GONZALEZ-MUNOZ, DET.
SALVATORE TRISCRITTI, SGT. JOHN HERBERT,
FIRE MARSHAL JOHN ORLANDO, FIRE MARSHAL
CONSTANTINE KANELOPOULOS, and FIRE
MARSHAL ERIC H. HANSEN,
                           Defendants.

------------------------------------------------------------------X

***AMENDED COMPLAINT
AND JURY DEMAND***

ECF CASE
Docket No. 19-cv-00542 (BMC)

      Plaintiff, Christopher Moore, by his attorney, Samuel C. DePaola, Esq., of Sim &

DePaola, LLP, for his complaint against the above Defendants, alleges as follows:

## PRELIMINARY STATEMENT

1.     This is a civil rights action in which Plaintiff seeks relief through 42 U.S.C. §1983 and 42

U.S.C §1988 for the violation of his civil rights protected by the Fourth and Fourteenth

Amendments, in addition to violations of the Laws of the State of New York.

2.     The following claims arise from an October 8, 2012 incident, in which defendants, acting

under color of state law, unlawfully arrested, searched, detained and interrogated Mr. Moore. Mr.

Moore was subsequently prosecuted and charged with two (2) counts of Murder in the Second

Degree and one (1) count of Arson in the Fourth Degree. As a result, Mr. Moore was deprived of

his liberty and suffered physical injuries. Mr. Moore was wrongfully incarcerated for over

seventy (70) months, until all charges were dismissed and sealed. Mr. Moore's case was

dismissed and sealed on, or about, December 20, 2017, following a criminal trial, where Mr. Moore was acquitted of all charges.

3.     Plaintiff seeks monetary damages (compensatory and punitive) against Defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4.     This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the Laws of the State of New York.

5.     The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendant jurisdiction.

## VENUE

6.     Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District. 28 U.S.C. § 1391 (b) and (c).

## PARTIES

7.     Plaintiff, Christopher Moore ("Mr. Moore"), resides in Brooklyn, County of Kings, City and State of New York.

8.     Defendant, City of New York ("City"), is a municipal corporation organized under the laws of the State of New York.

9.     At all times relevant hereto, Defendant City, acting through the New York City Police Department ("NYPD") and the Fire Department of the City of New York ("FDNY"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD and FDNY matters and was responsible for the appointment, training, supervision, discipline and

retention and conduct of all NYPD and FDNY personnel, including police officers, detectives, fire marshals, firefighters and supervisory officers as well as the individually named Defendants herein.

10.     In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD and FDNY, and for ensuring that the NYPD and FDNY personnel obey the laws of the United States and the State of New York.

11.     Defendant, Detective Erick M. Parks ("Parks"), was, at all times here relevant, a police officer employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Parks was, at the time relevant herein, a Police Detective under Tax Reg. No. 914909 in the 73rd Precinct, located at 1470 East New York Avenue, Brooklyn, New York 11212. Defendant Parks is being sued in his individual and official capacities.

12.     Defendant, Detective Marcelo Luc ("Luc"), was, at all times here relevant, a police officer employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Luc was, at the time relevant herein, a Police Detective under Tax Reg. No. 914588 in the 73rd Precinct, located at 1470 East New York Avenue, Brooklyn, New York 11212. Defendant Luc is being sued in his individual and official capacities.

13.     Defendant, Detective Elena Gonzalez-Munoz ("Munoz"), was, at all times here relevant, a police officer employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Munoz was, at the time relevant herein, a Police Detective under Tax Reg. No. 906360 in the 73rd Precinct, located at 1470 East

New York Avenue, Brooklyn, New York 11212. Defendant Munoz is being sued in her individual and official capacities.

14.     Defendant, Detective Salvatore Triscritti ("Triscritti"), was, at all times here relevant, a police officer employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Triscritti was, at the time relevant herein, a Police Detective under Tax Reg. No. 927607 in the 73rd Precinct, located at 1470 East New York Avenue, Brooklyn, New York 11212. Defendant Triscritti is being sued in his individual and official capacities.

15.     Defendant, Sergeant John Herbert ("Herbert"), was, at all times here relevant, a police officer employed by the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Herbert was, at the time relevant herein, a Police Sergeant under Tax Reg. No. 899349 in the 73rd Precinct, located at 1470 East New York Avenue, Brooklyn, New York 11212. Defendant Herbert is being sued in his individual and official capacities.

16.     Defendant, Fire Marshal John Orlando ("Orlando"), was, at all time here relevant, a fire marshal employed by the FDNY and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Orlando was, at the time relevant herein, a fire marshal under Tax Reg. No. 911647 in the Fire Investigation Bureau of the FDNY, based at City Wide South, 5700 1st Avenue, Brooklyn, New York 11220. Defendant Orlando is being sued in his individual and official capacities.

17.     Defendant, Fire Marshal Constantine Kanelopoulos ("Kanelopoulos"), was, at all time here relevant, a fire marshal employed by the FDNY and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Kanelopoulos was, at the time

relevant herein, a fire marshal under Tax Reg. No. 915774 in the Fire Investigation Bureau of the FDNY, based at City Wide South, 5700 1st Avenue, Brooklyn, New York 11220. Defendant Kanelopoulos is being sued in his individual and official capacities.

18.     Defendant, Fire Marshal Eric H. Hansen ("Hansen"), was, at all time here relevant, a fire marshal employed by the FDNY and as such was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Hansen was, at the time relevant herein, a fire marshal under Tax Reg. No. 909182 in the Fire Investigation Bureau of the FDNY based at City Wide South, 5700 1st Avenue, Brooklyn, New York 11220. Defendant Hansen is being sued in his individual and official capacities.

19.     At all times here mentioned Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

20.     Within 90 days of accrual dates for these claims, Plaintiff timely filed a written notice of claim with the New York City Office of the Comptroller.

21.     Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

22.     Plaintiff has complied with municipal defendant's request for an oral examination pursuant to Section 50-H of the New York General Municipal Law.

23.     This action has been commenced within one year and ninety days from the relevant accrual dates.

24.     Plaintiff has complied with conditions precedent prior to commencing the instant action.

### FACTUAL CHARGES

25.     On October 7, 2012, at approximately 12:00 a.m., Mr. Moore left his residence at 295 East 98th Street, Brooklyn, New York.

26.     Mr. Moore left his residence to enjoy a night out at Studio 10, a nightclub.

27.     When Mr. Moore returned to his residence, at approximately 4:00 a.m. that same morning, he observed it to be on fire and defendants to be outside of the location.

28.     Defendants, specifically defendant Orlando, asked Mr. Moore for a statement, because he was a resident of the building.

29.     Mr. Moore informed defendant Orlando that he was not present when the fire began and that he did not know how the fire started.

30.     Mr. Moore remained at the scene for a short time after giving his statement.

31.     Mr. Moore then left the location and went to stay with his aunt, Lisa Moore.

32.     On, or about, October 8, 2012, Mr. Moore visited his mother at Brookdale Hospital, who was an admitted patient being treated for advanced stage lung cancer.

33.     While Mr. Moore was visiting with his mother, defendants arrived at the hospital and asked Mr. Moore to come to the 73rd NYPD precinct to answer some questions regarding the fire.

34.     Mr. Moore agreed and voluntarily accompanied them to the precinct.

35.     Upon their arrival at the precinct, at approximately 8:30 p.m., on October 8, 2012, Mr. Moore informed defendants Parks, Orlando and Munoz that he was not present when the fire began and that he did not know how it started.

36.     After giving defendants, including defendants Parks, Orlando and Munoz, his statement at the precinct, Mr. Moore requested to leave the precinct and return to his deathly ill mother.

37.     Defendants, including defendants Parks, Orlando and Munoz, denied his request to leave the precinct and proceeded to illegally detain Mr. Moore against his will.

38.     Mr. Moore then asked defendants, including defendants Parks, Orlando and Munoz, for an attorney, because he was not permitted to leave the precinct.

39.     Defendants, including defendants Parks, Orlando and Munoz, ignored Mr. Moore's request for an attorney and proceeded to illegally detain and interrogate him against his will.

40.     At approximately 12:53 a.m., on October 9, 2012, defendants Parks, Orlando, Munoz, Luc, Triscitti, Kanelopoulos and Hansen, proceeded to further illegally question Mr. Moore about the fire.

41.     Once again, Mr. Moore told them he was not present when the fire began and that he did not know how it started.

42.     Mr. Moore was then told by defendants, including defendants Parks, Orlando, Munoz, Luc, Triscitti, Herbert, Kanelopoulos and Hansen, that he would not be free to leave the precinct and would never see his mother again, unless he said what defendants, including defendant Parks, Orlando, Munoz, Luc, Triscitti, Herbert, Kanelopoulos and Hansen,, directed him to say.

43.     Defendants, including defendants Parks, Orlando and Munoz, stated to Mr. Moore that if he said what they wanted him to say, he would be free to leave.

44.     Defendants, including defendants Parks, Orlando, Munoz, Luc, Triscitti, Herbert, Kanelopoulos and Hansen, lied to Mr. Moore, falsely telling him that if he told defendants that he started the fire by accident, he would be free to leave and see his mother before she died, because accidental fires are not considered crimes and that they were only holding him because they could not close their case until someone told them how it started.

45.     Defendants, including Parks, Orlando, Munoz, Luc, Triscitti, Herbert, Kanelopoulos and Hansen,  went so far as to tell Mr. Moore that if he was ever charged, defendants would testify in court to protect him and would ensure that he would never be convicted or go to prison.

46.     Defendants Parks, Orlando and Munoz then left the interrogation room and returned at approximately 5:10 a.m. that same morning.

47.     Defendants Parks, Orlando and Munoz then proceeded to further illegally question Mr. Moore about the incident, to which Mr. Moore, once again, denied any knowledge regarding the origins of the fire.

48.     After approximately one (1) hour of interrogation, defendants left the room.

49.     Defendants Parks, Orlando and Munoz, also at approximately 5:10 a.m. to 6:10 a.m. that morning, and while inside of the interrogation room with Mr. Moore, proceeded to place a call on speaker to his deathly ill mother to further coerce Mr. Moore into falsely admitting to crimes that defendants knew never occurred or that Mr. Moore was innocent of.

50.     Despite this extremely despicable, underhanded and coercive tactic, Mr. Moore told the truth about what he knew about the incident, which was the same truth he had already told defendants multiple times --- that he was not present when the fire began and had no idea how it started.

51.     Defendants Parks, Orlando and Munoz then left Mr. Moore trapped in the interrogation room and, presumably, went home to sleep.

52.     About six (6) hours later, at approximately 11:00 a.m., Defendants Parks, Orlando, Munoz, Luc, Triscitti, Herbert, Kanelopoulos and Hansen, entered the interrogation room, where Mr. Moore was being illegally detained and questioned without his requested attorney.

53.    At approximately 12:10 p.m., defendants, including Parks, Orlando, Munoz, Luc, Triscitti, Herbert, Kanelopoulos and Hansen, obtained, through undue duress and coercion, false verbal and written statements from Mr. Moore, statements that defendants knew to be untrue and that that they knew to be procured via illegal means.

54.    Later that day, at approximately 3:44 p.m., defendants, including Luc and Orlando, were present with Mr. Moore, he was further coerced, while under extreme duress, into giving a videotaped statement that defendants knew to be false and obtained in contravention of the laws of the United States and the State of New York.

55.    Defendants, including Kanelopoulos and Hansen, at approximately 6:30 p.m., continued to illegally interrogate Mr. Moore by demanding that he admit to events that never occurred, all without his requested attorney present.

56.    Defendants, including Kanelopoulos and Hansen, further illegally and deliberately misinformed Mr. Moore that if he conformed his admission statements to defendants' preferences, he would be free to leave and would not be held criminally liable.

57.    Through their use of illegal methods, defendants, including Parks, Orlando, Munoz, Luc, Triscitti, Kanelopoulos and Hansen, coerced Mr. Moore into giving yet another false written statement that they knew to be untrue and to be the product of their extrajudicial, bordering on torturous, tactics.

58.    The second written confession provided by Mr. Moore was procured by Defendants Kanelopoulos and Hansen through their use of coercion, impermissible lies or deception regarding potential criminal liability or ramifications, prolonged detainment, exhaustion tactics.

59.    The written confessions that were allegedly voluntarily and knowingly provided by Mr. Moore are clearly the work of someone trained in the field of criminal arson investigations, as

they are incredibly written to ever so narrowly traverse into the realm of criminality. So narrowly, in fact, that it would be impossible for an inexperienced individual, such as Mr. Moore, to detect or comprehend that he was actually admitting to Murder.

60.    The words and sequence of events comprising Mr. Moore's multiple confessions were clearly provided by defendants, including Parks, Orlando, Munoz, Luc, Triscitti, Kanelopoulos and Hansen, as they are markedly different from Mr. Moore's speech pattern, style and vocabulary content.

61.    Defendants Orlando and Kanelopoulos, at approximately 11:00 p.m. that same day, conducted yet another unlawful interrogation of Mr. Moore.

62.    Defendants, Parks, Orlando, Munoz, Luc, Triscitti, Kanelopoulos and Hansen, once again, obtained a false confession from a person they knew to be innocent and who only wanted to go see his mother before she passed.

63.    Defendants, including defendants Parks, Orlando, Munoz, Luc, Triscitti, Kanelopoulos and Hansen, coerced Mr. Moore into falsely admitting that he accidentally or recklessly started the fire and into writing and signing similarly false statements.

64.    Defendants, including defendants Parks, Orlando, Munoz, Luc, Triscitti, Kanelopoulos and Hansen, subjected Mr. Moore to sleep deprivation, lies, phone calls from his dying mother, manipulation from various detectives and fire marshals, who repeatedly lied, telling Mr. Moore that if he admitted to accidentally starting the fire, he would be free to leave and see his mother before she passes. All of which are legally impermissible and amount to serious and gross deviations from proper police conduct and procedure.

65.    Instead of going free, Mr. Moore was taken to Kings County Central Booking, where he awaited arraignment on criminal charges for crimes that he did not commit.

66.     Mr. Moore's mother, unfortunately, passed away the next week without ever seeing her son again, but with the knowledge that her son was a confessed murderer, who was probably going to prison for the remainder of his life.

67.     Defendants, including defendants Parks, Orlando, Munoz, Luc, Triscitti, Herbert, Kanelopoulos and Hansen, intentionally provided Mr. Moore's false confession to the Kings County District Attorney's Office, knowing that it contained false statements and that it was procured via illegal means and methods, in gross violations of Mr. Moore's rights.

68.     Defendant Herbert was the supervisor of defendants Parks, Munoz, Luc, and Triscitti, and knew, or should have known that defendants were acting in gross deviation from proper police procedure, in bad faith, and in direct violation of Mr. Moore's rights.

69.     Defendant Parks was Mr. Moore's arresting officer and signed his criminal court complaint, knowingly and falsely accusing Mr. Moore of Murder in the Second Degree and other related charges.

70.     Mr. Moore was arraigned and formally charged with two (2) counts of Murder in the Second Degree and one (1) count of Arson in the Fourth Degree.

71.     Mr. Moore was unable to meet his bail conditions and was sent to Rikers Island, where he would remain until he was acquitted of all charges after a jury trial on December 20, 2017.

72.     Defendants, including defendants Orlando and Kanelopoulos, testified before a grand jury convened to investigate the charges against Mr. Moore and offered false, fraudulent and misleading testimony to ensure that he was indicted, including Mr. Moore's illegally obtained false confession through the use of coercion and other impermissible tactics.

73.     Defendants, including defendants Parks, Orlando, Munoz, Luc, Herbert, Triscitti, Kanelopoulos and Hansen, procured Mr. Moore's indictment via fraud, perjury, the suppression

of evidence and other conduct undertaken in bad faith, including, but not limited to, the use of Mr. Moore's coerced and false confession.

74.     Defendants, including defendants Parks, Orlando, Munoz, Luc, Triscitti, Herbert, Kanelopoulos and Hansen, failed to disclose, misrepresented and provided false material details, regarding the presence of probable cause and Mr. Moore's false confession, to the District Attorney's Office.

75.     At no point did the Defendants, including defendants Parks, Orlando, Munoz, Luc, Triscitti, Herbert, Kanelopoulos and Hansen, ever observe Mr. Moore commit any crime or offense.

76.     At no point were the defendants, including defendants Parks, Orlando, Munoz, Luc, Triscitti, Herbert, Kanelopoulos and Hansen, ever told by any witnesses that Mr. Moore committed any crime or violation of the law.

77.     The defendants, including defendants Parks, Orlando, Munoz, Luc, Triscitti, Herbert, Kanelopoulos and Hansen, had no probable cause or reasonable suspicion to arrest, detain or stop Mr. Moore.

78.     Mr. Moore did not violate any law or local ordinance, nor did he knowingly or voluntarily confess to violating any law.

79.     Defendants, including defendants Parks, Orlando, Munoz, Luc, Triscitti, Herbert, Kanelopoulos and Hansen, never possessed probable cause to believe a prosecution would succeed or that Plaintiff was guilty of any crime, as they were all fully aware that Mr. Moore was innocent and that his confession contained false admissions procured via illegal means.

80.     While Plaintiff was in central booking, Defendants, including defendants Parks, Orlando, Munoz, Luc, Triscitti, Herbert, Kanelopoulos and Hansen, acting with malice, conveyed false,

misleading and incomplete information to prosecutors in order to have Plaintiff prosecuted for Murder in the Second Degree and other related charges, namely that his confession was obtained legally, voluntarily and willfully.

81.     Defendants, including defendants Parks, Orlando, Munoz, Luc, Triscitti, Herbert Kanelopoulos and Hansen, suppressed evidence and engaged in conduct undertaken in bad faith, namely the unlawful procurement of Mr. Moore's confessions in the absence of his requested attorney, the use of coercion tactics to obtain said confession, and the suppression of evidence showing that the fire could not have started the same way as detailed in Mr. Moore's false confession.

82.     After his arraignment, Mr. Moore was incarcerated on Rikers Island.

83.     During Mr. Moore's incarceration on Rikers Island he was forcibly subjected to over One Hundred (100) strip searches with cavity inspections.

84.     Mr. Moore was also subjected to abuse, harassment and physical attacks by other inmates.

85.     Mr. Moore's incarceration exacerbated his symptoms associated with his asthma condition, which required him to be prescribed with a more potent dose of albuterol.

86.     Plaintiff was incarcerated for approximately seventy (70) months, until his acquittal of all charges after trial.

87.     On, or about, December 20, 2017, Mr. Moore was acquitted of all criminal charges following a trial by jury, representing a favorable termination of the prosecution against him.

88.     During all of the events described, the defendants, including Parks, Orlando, Munoz, Luc, Triscitti, Herbert, Kanelopoulos and Hansen, acted maliciously and with intent to injure Plaintiff.

89.     At all times relevant hereto, defendants, including Parks, Orlando, Munoz, Luc, Triscitti, Herbert, Kanelopoulos and Hansen, were involved in the decision to arrest Plaintiff without probable cause or failed to intervene when they observed others arresting Plaintiff without probable cause.

90.     At all times relevant hereto, defendants, including Parks, Orlando, Munoz, Luc, Triscitti, Kanelopoulos and Hansen, engaged in gross deviations from proper NYPD or FDNY procedures, fraud, perjury, the suppression of evidence and other actions conducted in bad faith, or failed to intervene when defendants observed others doing so, all in furtherance of Plaintiff's criminal prosecution.

91.     Defendants Kanelopoulos, Orlando and Hansen falsely identified the subject fire as criminally started to obtain additional overtime compensation.

92.     Defendants Kanelopoulos, Orlando and Hansen falsely accused Mr. Moore and procured and false confession from him to justify their previously submitted false arson report stating that the subject fire was criminal in nature or criminally suspicious.

93.     Upon information and belief, supervisors or policymakers of the NYPD, FDNY or City, were aware, or should have been aware that the individually named defendants, herein, were unfit for employment as law enforcement personnel due to prior violations of a similar nature, civilian complaints, lawsuits, internal performance reviews, internal complaints, or their own personal observations of defendants, but failed to take any action to correct defendants' behavior.

94.     Upon information and belief, Defendants Kanelopoulos, Orlando and Hansen have a long and documented history of illegally procuring false confessions to suspected arsons and of falsely labeling fires as being criminally suspicious, when defendants were fully aware that said fires were nonsuspicious, accidental or noncriminal in nature.

95.     Upon information and belief, Defendant Kanelopoulos has falsely and fraudulently categorized hundreds of fires as criminally suspicious, when he was fully aware, or should have been fully aware that said fires were accidental or nonsuspicious in nature.

96.     Upon information and belief, Defendant Kanelopoulos falsely classified these fires as criminally suspicious, so it would allow him to perform a criminal investigation, make arrests, conduct unlawful interrogations, garner arrest credits and procure confessions.

97.      Upon information and belief, Defendant Kanelopoulos misclassified accidental nonsuspicious fires and conducted baseless criminal investigations to incur thousands of hours in overtime compensation pay, the favor of his superiors, and credit for solving crimes that never occurred.

98.     Upon information and belief, Defendant Kanelopoulos' record as a fire marshal will be riddles with a plethora of poorly investigated and mislabeled fires, illegal criminal investigations, coerced confessions and unlawful arrests and prosecutions.

99.     Defendant Kanelopoulos' unsavory and unconstitutional history, conduct and proclivities are so notorious that Defendants Orlando, Hansen and the City of New York knew, or should have known that he was unfit for employment in any kind of law enforcement position, or for any employment.

100.     As a direct and proximate result of the acts of defendants Parks, Orlando, Munoz, Luc, Triscitti, Herbert, Kanelopoulos and Hansen, Plaintiff suffered the following injuries and damages: violations of his rights pursuant to the Fourth and Fourteenth Amendment of the United States Constitution, violations of New York State law, physical injury, physical pain and suffering, emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety, loss of liberty and harm to reputation.

## FIRST CAUSE OF ACTION
False Arrest and False Imprisonment Under
New York State Law

101.    The above paragraphs are here incorporated by reference as though fully set forth.

102.    Defendants subjected Plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

103.    Plaintiff was conscious of his confinement.

104.    Plaintiff did not consent to his confinement.

105.    Plaintiff's arrest and false imprisonment was not otherwise privileged.

106.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

107.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
False Arrest and False Imprisonment Under
42 U.S.C. § 1983 Against Individual Defendants

108.    The above paragraphs are here incorporated by reference as though fully set forth.

109.    The Defendants violated the Fourth and Fourteenth Amendments to the U.S. Constitution by wrongfully and illegally arresting, detaining and imprisoning Plaintiff.

110.    The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

111.    At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

112.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**THIRD CAUSE OF ACTION**
Assault and Battery Under
New York State Law

113.     The above paragraphs are here incorporated by reference as though fully set forth.

114.     Defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

115.     Defendants engaged in and subjected plaintiff to immediate harmful and/or offensive touching and battered him without his consent.

116.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

117.     As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

**FOURTH CAUSE OF ACTION**
Malicious Prosecution Under
New York State Law

118.     The above paragraphs are here incorporated by reference as though fully set forth.

119.     Defendants initiated the prosecution against Plaintiff.

120.     Defendants lacked probable cause to believe Plaintiff was guilty or that a prosecution would succeed.

121.     Defendants acted with malice.

122.     The prosecution was terminated in Plaintiff's favor, when he was acquitted of all criminal charges after trial.

123.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

124.    As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

### FIFTH CAUSE OF ACTION
Malicious Prosecution Under
42 U.S.C. § 1983 Against Individual Defendants

125.    The above paragraphs are here incorporated by reference as though fully set forth.

126.    Defendants initiated the prosecution against Plaintiff.

127.    Defendants lacked probable cause to believe Plaintiff was guilty or that a prosecution would succeed.

128.    Defendants acted with malice.

129.    The prosecution was terminated in Plaintiff's favor when he was acquitted of all criminal charges after trial.

130.    Defendants violated Plaintiff's Fourth Amendment rights by causing Plaintiff to remain incarcerated against his will after his arraignment.

131.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### SIXTH CAUSE OF ACTION
Malicious Abuse of Process Under
New York State Law

132.    The above paragraphs are here incorporated by reference as though fully set forth.

133.    Defendants arrested, detained and caused a criminal prosecution to be initiated against Plaintiff to compel the compliance or forbearance of some act.

134.    Defendants had no excuse or justification to forcibly detain or initiate a prosecution against Plaintiff, especially with the absence of any cognizable probable cause.

135.    Defendants intended to inflict substantial harm upon Plaintiff.

136.    Defendants acted to achieve a collateral purpose, beyond or in addition to Plaintiff's criminal prosecution.

137.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

138.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

<u>**SEVENTH CAUSE OF ACTION**</u>
Malicious Abuse of Process Under
42 U.S.C. § 1983 Against Individual Defendants

139.    The above paragraphs are here incorporated by reference as though fully set forth.

140.    Defendants arrested, detained and caused a criminal prosecution to be initiated against Plaintiff to compel the compliance or forbearance of some act.

141.    Defendants had no excuse or justification to forcibly detain and initiate a prosecution against Plaintiff, especially with the absence of any cognizable probable cause.

142.    Defendants intended to inflict substantial harm upon Plaintiff.

143.    Defendants acted to achieve a collateral purpose, beyond or in addition to Plaintiff's criminal prosecution.

144.    Defendants' actions deprived Plaintiff of his right to free from illegal searches and seizures, as well as his right not to be deprived of his liberty without due process of law.

145.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
Intentional Infliction of Emotional Distress Under
New York State Law

146.    The above paragraphs are here incorporated by reference as though fully set forth.

147.    The conduct of Defendants was extreme and outrageous.

148.    Defendants' extreme and outrageous conduct was perpetrated with the intent to cause, or

with disregard to a substantial probability of causing, severe emotional distress to Plaintiff.

149.    Defendants' extreme and outrageous conduct is causally related to Plaintiff's injuries.

150.    Defendants' extreme and outrageous conduct caused Plaintiff to sustain extreme

emotional distress.

151.    Defendant City, as employer of the individual Defendants, is responsible for their

wrongdoing under the doctrine of respondeat superior.

152.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

## NINTH CAUSE OF ACTION
Failure to Intervene Under
New York State Law

153.    The above paragraphs are here incorporated by reference as though fully set forth.

154.    Those Defendants that were present but did not actively participate in the aforementioned

unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a

duty to intervene and prevent such conduct and failed to intervene.

155.    Defendant City, as employer of the individual Defendants, is responsible for their

wrongdoing under the doctrine of *respondeat superior*.

156.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

**TENTH CAUSE OF ACTION**
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

157.    The above paragraphs are here incorporated by reference as though fully set forth.

158.    Those Defendants that were present but did not actively participate in the aforementioned

unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty

to intervene and prevent such conduct and failed to intervene.

159.    Accordingly, the Defendants who failed to intervene violated the Fourth and Fourteenth

Amendments.

160.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages

hereinbefore alleged.

**ELEVENTH CAUSE OF ACTION**
Negligent Hiring, Training, Retention and Supervision Under
New York State Law

161.    The above paragraphs are here incorporated by reference as though fully set forth.

162.    Defendant City owed a duty of care to Plaintiff to adequately hire, train, retain and

supervise its employee defendants.

163.    Defendant City breached that duty of care.

164.    Defendant City placed defendants in a position where they could inflict foreseeable harm.

165.    Defendant City knew or should have known of its employee defendants' propensity for

violating the individual rights granted under the United States Constitution and the laws of the

State of New York, prior to the injuries incurred by Plaintiff.

166.    Defendant City failed to take reasonable measures in hiring, training, retaining and

supervising its employee defendants that would have prevented the aforesaid injuries to Plaintiff.

167.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### TWELFTH CAUSE OF ACTION
Municipal "*Monell*" Liability Under
42 U.S.C. § 1983 Against Defendant City

168.    The above paragraphs are here incorporated by reference as though fully set forth.

169.    Defendant City maintained a policy, custom or practice that caused Plaintiff to be deprived of his Constitutional right to the due process of law and to be free from illegal searches and seizures.

170.    Defendant City's employees' illegal practice is so consistent and widespread that it constitutes a custom or usage of which a supervising policy maker must have been aware of.

171.    Defendant City and its policymakers failed to provide adequate training or supervision to subordinates to such an extent that it is tantamount to their deliberate indifference towards the rights of those who come into contact with Defendant City's employees.

172.    Defendant City's employees engaged in such egregious and flagrant violations of Plaintiff's Constitutional rights that the need for enhanced supervision and training is obvious and therefore tantamount to a display of deliberate indifference by Defendant City and its policymakers towards the rights of individuals who come into contact with defendant City's employees.

173.    Defendant City's conduct violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

174.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a) In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

b) Awarding Plaintiff punitive damages in an amount to be determined by a jury;

c) Awarding Plaintiff compensatory damages in an amount to be determined by a jury;

d) Awarding Plaintiff reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

e) Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated: July 30, 2019


Respectfully submitted,

S/ Samuel C. DePaola_____
Samuel C. DePaola, Esq.
Bar Number: SD3243
*Attorneys for Mr. Moore*
Sim & DePaola, LLP
4240 Bell Blvd, Suite 201
Bayside, NY 11361
T: (718) 281-0400
F: (718) 631-2700
sdepaola@simdepaola.com