```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
CHRISTOPHER MOORE,                                          :
                                                            :   **MEMORANDUM DECISOIN**
                            Plaintiff,                      :   **AND ORDER**
                                                            :
              - against -                                   :   19-cv-0542 (BMC)
                                                            :
                                                            :
CITY OF NEW YORK, *et al*.,                                 :
                                                            :
                            Defendants.                     :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff was arrested, tried for, and acquitted of charges that he started a fire that burned down the apartment building in which he lived, a fire in which one of the other tenants died. He brings this action based on: (1) false arrest under state law; and (2) malicious prosecution and failure to intervene under 42 U.S.C. § 1983 and state law.

Within hours of the fire, the police had probable cause to arrest and prosecute plaintiff based on sworn statements from non-party witnesses and the preliminary scene assessment by the fire marshal that the "non-accidental" fire started in plaintiff's apartment. Plaintiff contests the truth of the confessions that he gave around the same time as those non-party statements, but the witness statements, along with the fire marshal's assessment ruling out accidental causes to the fire, constituted probable cause to arrest and prosecute plaintiff, even without regard to plaintiff's confessions. Defendants' motion for summary judgment is therefore granted.

**BACKGROUND**

Plaintiff lived in one of four apartments in a building in Brownsville, Brooklyn. It was a two-story building with two apartments on each floor. Plaintiff lived in the front apartment on the first floor with, at various times, one or two other residents, one of whom was known as Trini. The other three apartments were occupied by Pamela McGill and her fiancé; two men named Mark LNU and Daniel Hernandez; and Shelly Kinley. The building burned in the early morning of October 7, 2012, killing Kinley. In evening of October 9th, the police obtained sworn statements from McGill and Hernandez that incriminated plaintiff. On the same day, plaintiff gave four statements to authorities confessing that he started the fire.

I.  **The McGill statement**

In an interview with an Assistant District Attorney ("ADA") on October 9, 2012, Pamela McGill (a/k/a "Mom") swore that she had heard plaintiff threaten to burn the building down on multiple occasions, most recently on October 6, 2012 (hours before the fire), in response to Kinley asking plaintiff to turn down his music during a cookout that the other tenants (all except Kinley) were having. Specifically, when Kinley slammed his apartment door after asking plaintiff to turn down his music, plaintiff responded, "Oh, I need to burn this m__f__ down." McGill understood him as referring to the building, and she urged him to stop saying things like that.

Once the fire department extinguished the fire, McGill saw all the tenants except plaintiff and Kinley. A few moments later, McGill saw plaintiff "standing off to the side leaning on a car." McGill went up to plaintiff and he told her that the fire marshal, defendant John Orlando, had told plaintiff that the fire started in plaintiff's apartment in a pile of clothes, likely the result of a cigarette or incense. McGill said to plaintiff that if plaintiff had set the fire, he was wrong to

2

have done so. Plaintiff swore to McGill that he didn't do it, although he admitted that he had threatened to.

Plaintiff then gave McGill two different explanations of his whereabouts when the fire broke out. First, he said he was not present, but that he had gone to see his mother, who gave him $30, and that he then went "someplace" to get drunk and so missed the arrival of the firetrucks. Then, he said that he had been close enough to see the fire trucks arrive, but he was "afraid to come up the block." McGill told plaintiff he should go and tell Charles King, who lived in a separate house in the area, about the fire. King had previously shared the apartment with plaintiff and was the tenant of record. Plaintiff then walked away.

A few minutes later, King came to the site. McGill told King that Kinley had been taken to the hospital, which disturbed King. Plaintiff then approached King, and McGill heard plaintiff tell King, first, that plaintiff wasn't at the house when the fire started, but then, plaintiff told King that he (plaintiff) was there but in Hernandez's apartment, not his own. As McGill stated, "he [plaintiff] told different stories through the whole thing." King said to plaintiff, "it's just mighty funny that you made the comments about the building, you gonna burn it down and it's burnt down now," to which plaintiff replied, "oh, I didn't mean it, you know I would never do anything, I would never do nothing to hurt nobody in the building."

Finally, Hernandez's roommate, Mark, spoke to McGill. Mark told McGill that he had just spoken to plaintiff and that plaintiff had lied about not being in the house shortly before the fire started because he, Mark, had been with plaintiff. Mark further told McGill that he had seen plaintiff walking back and forth between the apartments on the first floor carrying a liquor bottle, even though plaintiff had told Mark that he (plaintiff) had gone drinking somewhere else.

## II. The Hernandez statement

Daniel Hernandez also gave a sworn statement on the evening on October 9th in response to questions from an ADA.

Hernandez had attended the cookout on October 6th. He had heard Kinley come down and tell plaintiff to turn down the music. He stated that thereafter, plaintiff and Mark had eaten in Hernandez's apartment, and that plaintiff had gone back and forth between his apartment and Hernandez's apartment. Finally, about 12:30 or 1:00 a.m. on October 7th, plaintiff went down to his apartment to get his jacket because plaintiff was going out. Plaintiff stopped briefly in Hernandez's apartment on his way out and told Hernandez to lock the front door behind him because plaintiff had no key, which Hernandez did.

Five to ten minutes later, Hernandez saw smoke coming into his apartment from plaintiff's apartment. He opened the door to plaintiff's apartment which released more smoke. He encountered McGill in the hallway, who asked him from where the smoke was coming, and he responded that it was coming from plaintiff's apartment. He and McGill fled the building. Hernandez never saw plaintiff again after that.

## III. The Fire Marshal's Preliminary Assessment

Fire marshal Orlando arrived at the scene approximately 2-3 hours after the fire. Near plaintiff's kitchen were two dressers and Orlando determined that the fire originated there. Having found the fire's point of origin, Orlando and his team then attempted to discern whether the fire was started by accident and began looking for common causes of accidental fires (<u>e.g.</u>, extension cords, cables, wiring, appliances, or candles). Unable to find any debris of these items, the team shifted their focus to the kitchen stove and oven. As all the fire damage to the stove

4

was to its exterior and since nothing was inside the oven, the team eliminated these two as possible causes of the fire. There were also no signs that anyone was in the process of cooking. Orlando concluded that the fire's origin was "non-accidental" during the course of his investigation in the morning of October 7, 2012.

## IV. Plaintiff's confessions

The parties dispute the circumstances under which plaintiff gave four confessions to the police and the ADA on October 9th, but there is no dispute about what plaintiff said in those confessions, as two are handwritten and signed by him and the other two are video recorded.[1]

First, it is undisputed that plaintiff voluntarily appeared at the police precinct once he heard that the police had issued an I-card for his appearance. It is also undisputed that he appeared there at about 8 p.m. on October 8th, and was given *Miranda* warnings at 9:00 p.m. By 12:10 p.m. on October 9th, he had hand-written and signed a confession. In the confession, he explained that in the early morning of October 7th, he was lighting a cigarette and accidentally

---

[1] In opposing summary judgment, plaintiff raises the peculiar argument that the hand-written, video statements and perhaps even the fire marshal's report are not "authentic" and therefore inadmissible. But plaintiff does not deny that the videos depict his image, and that the handwritten statements are in his handwriting, and that he confessed as his statements reflect. In fact, he offers no explanation as to why he thinks this evidence is not "authentic."

Under Federal Rule Evidence 902(a), authenticity has a low threshold, requiring only that the proponent "produce evidence sufficient to support a finding that a finding that the item is what the proponent claims it is." These documents have been authenticated as coming from the police and District Attorney files, and plaintiff admits they are his statements. I therefore reject his argument that the evidence is inadmissible. Furthermore, plaintiff's hearsay objection to the introduction of own words is meritless because it's being offered by defendants.

Similarly, plaintiff summarily asserts that the witness and fire marshal statements are hearsay, including plaintiff's own statements. They are not hearsay because they are not being offered for the truth of the statements, but to show whether an objectively reasonable officer would believe that the statements, true or not, gave him probable cause to make an arrest. See Jerome v. Crum, 695 F. App'x 935, 936 n.1 (6th Cir. 2017) ("Although it is well established that a court may not consider hearsay when deciding a summary judgment motion, the subject of the current suit is whether the information available to defendant sufficed to constitute probable cause. As a result, the statements were offered to demonstrate that the defendant's investigation of the plaintiff]had been undertaken upon probable cause and without malice, rather than to establish their truth, and are not hearsay.") (*colatus*).

Plaintiff's authenticity and hearsay arguments present a different issue than his argument that he was coerced into confessing. The coercion argument is discussed below.

dropped the hot match and ash on his jacket, which he was not wearing at the time. He had previously spilled some lighter fluid on the jacket and had sprayed it with "fragrance" (cologne) to obscure the smell. The jacket ignited upon contact with the hot match and ashes. Plaintiff beat out the flames, or thought he had, and he left the house. The statement ended with "I am so sorry."

At about 4:00 p.m. that same day, plaintiff gave a much more detailed video confession to an ADA after again being advised of his rights. It was consistent with his earlier written statement. At about 7:30 pm, he gave another hand-written statement, consistent with his prior statements, except plaintiff additionally admitted that he had a history of pyrophilia (my characterization) and he requested help for that condition. He gave another detailed video confession, again after receiving *Miranda* warnings, at about 11:00 p.m. that same day. It was also consistent with his earlier statements, which he acknowledged.

V. **Subsequent prosecution**

The NYPD arrest report lists plaintiff's time of arrest as October 12, 2012 at 2:20 a.m. He was arraigned at about 8:00 p.m. that evening and charged with second degree murder and fourth degree arson. On October 12, 2012, plaintiff was indicted for second degree murder, third degree arson, and fourth degree arson. Unable to make bail, plaintiff was held at Rikers Island from October 12, 2012 until December 20, 2017. On that date, he was acquitted of the charges after trial.

VI. **Plaintiff's affidavit in opposition to summary judgment**

In his affidavit in opposition to this summary judgment motion, plaintiff, although acknowledging that he made the statements in his written confessions and videos, expressly

6

denies every material fact to which he confessed. He denies ever spilling lighter fluid on his jacket or spraying it with cologne. He denies lighting a match in his apartment on October 6th or any other date. He denies that his jacket ignited or that he tried to put it out. He denies ever threatening to burn the building down. He "does not remember" getting any complaints about his music being too loud at the cookout.

Instead, he offers additional facts to show that his confessions were coerced and that what he said was in fact untrue. He says that the police only advised him of his *Miranda* rights once, when he first arrived at the precinct (although he acknowledges that the ADAs also advised him of his rights before each video confession). He avers that after telling the police that he had left the apartment building before the fire began and that he did not know how it had started, he requested to leave the precinct, but "was told that he would not free to leave, unless I told them how the fire started or who started it."

He further avers that he requested an attorney more than five times over the next 12 hours, but that his requests were ignored or denied. Rather, the fire marshals and detectives told him that if he asked to leave or speak with an attorney, "everyone would believe that I started the fire intentionally and I would be prosecuted and sent to prison for Murder and Arson." He states that the detective and fire marshals called his dying mother on speakerphone and told her that he would be going to prison for murder unless he admitted accidentally starting the fire. He also states that the detectives and fire marshals told him that if he admitted starting the fire accidentally, he would not be criminally charged and could go home.[2]

---

[2] Plaintiff acknowledges that he was provided with food, drinks, and the opportunity to smoke cigarettes when speaking to the fire marshals and detectives.

Based on these "threats and promises," plaintiff avers, he signed his written confessions, but the confessions were dictated to him word for word by the fire marshals or detectives. And he gave the videotaped confessions because the fire marshals and detectives told him that if he did, he would be able to go home.

## DISCUSSION

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A fact is material when it might affect the outcome of the suit under governing law." Tracy v. Freshwater, 623 F.3d 90, 95 (2d Cir. 2010) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

"In assessing the record to determine whether there is a genuine issue to be tried, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010). "Although on summary judgment the evidence must be viewed in the light most favorable to Plaintiffs as the non-moving parties, when there is reliable objective evidence – such as a recording – the evidence may speak for itself." Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012). "Although summary judgment is proper where there is nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony, district courts should not engage in searching, skeptical analyses of

parties' testimony in opposition to summary judgment." Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014) (internal quotations marks and citations omitted).

Under New York law, where an officer makes an arrest without a warrant, the presumption arises that the plaintiff's arrest was unlawful. Jenkins v. City of New York, 478 F.3d 76, 88 (2d Cir. 2007).[3] However, "this presumption is rebutted if, applying the reasonable, prudent person test, the arresting officer, acting in good faith, had 'reasonable cause for believing the person to be arrested to have committed [a felony].'" Id. (citing Dillard v. City of Syracuse, 51 A.D.2d 432, 435 (4th Dep't 1976) (quoting People v. Coffey, 12 N.Y.2d 443, 451 (1963))). The "good faith" requirement does not require a factual determination of the officer's subjective intent; rather, it examines whether, when the facts are construed in favor of the plaintiff, the officer's probable cause determination was objectively reasonable. Id.

Put differently, the existence of probable cause is an absolute defense to a false arrest claim. Jaegly v. Couch, 439 F.3d 149, 151-52 (2d Cir. 2006). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Jenkins, 478 F.3d at 84 (internal quotation marks omitted). Similarly, "[t]o prevail on a malicious prosecution claim, plaintiffs must show, among other things, a "lack of probable cause . . . ." Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). Further, "absent new countervailing facts, probable cause for arrest establishes probable cause for prosecution." Jouthe v. City of New York, No. 05-cv-1374, 2009 WL 701110, at *12 (E.D.N.Y. March 10, 2009) (internal quotation marks omitted).

---

[3] Plaintiff initially brought false arrest claims under state law and § 1983, but he withdrew the latter because the accrual date under federal law, as opposed to state law, made his federal claim untimely. See Lynch v. Suffolk County Police Department, 348 F. App'x 672, 675 (2d Cir. 2009) (holding the statute of limitations begins to run on plaintiff's § 1983 false arrest claim at his arraignment).

9

Plaintiff contends that there are essentially two related factual issues that preclude summary judgment.

The first is whether he was placed under arrest either late on October 8th or early on October 9th, when he alleges that he was told that he was not free to leave, or on October 12th, as stated in the arrest report. It seems clear that if plaintiff was given his *Miranda* rights late on October 8th *and* told that he was not free to leave, that would be considered an arrest. See Posr v. Doherty, 994 F.2d 91, 98 (2d Cir. 1991). Therefore, according to plaintiff, a factfinder needs to determine whether, in fact, plaintiff was told that he was not free to leave.

The second issue plaintiff raises is whether his confessions were true, or whether they were untrue because he was coerced into giving them. Determining the truth of the confessions, plaintiff contends, would require the finder of fact to consider whether the circumstances surrounding his confessions (or at least the first confession on October 9th), caused him to say things that were not true, just so he could stop the fire marshals and police from pressuring him and in the hope that they would let him go.

However, neither of these purported factual issues are material. Even assuming that plaintiff was arrested shortly before midnight on October 8th, and that his confessions were false as a result of coercion, the police had probable cause to arrest him on October 9th by virtue of the McGill and Hernandez statements and the fire marshal's assessment that the fire originated in plaintiff's apartment and was "non-accidental". Circumstantial evidence can add up to probable cause just as well as direct evidence. See generally Stansbury v. Wertman, 721 F.3d 84, 91 (2d Cir. 2013); Velardi v. Walsh, 40 F.3d 569, 574-75 (2d Cir. 1994); United States v. Premises and Real Property at 4492 South Livonia Road, Livonia, N.Y., 889 F.2d 1258, 1269 (2d Cir. 1989)

(stating "probable cause could be established on the basis of such circumstantial evidence, even when no actual transaction was witnessed").

There is no dispute that within hours of plaintiff's arrival at the police station, the police had obtained the sworn statements of McGill and Hernandez. Those statements – including assertions that plaintiff had threatened to burn the building down the day of the fire and other times before; that he had a verbal altercation on the day of the fire with the tenant who died in the fire; and that he dissembled and gave different stories of his whereabouts to several of the tenants after the fire, along with the fire marshal's preliminary assessment that the "non-accidental" fire started in plaintiff's apartment due to a cigarette or incense within some pile of clothes, were more than sufficient to constitute probable cause to arrest plaintiff, without regard to plaintiff's confessions. See Fudge v. Town of Shandaken Police, No. 09-cv-300, 2010 WL 3258385, at *4 (N.D.N.Y. Aug. 16, 2010) (where police had three witness statements, each stating that (1) the plaintiff told them that he would burn down a trailer; (2) they saw the plaintiff proceed towards the trailer with newspapers in hand; (3) they saw flames shortly thereafter; and (4) the fire investigator had ruled out causes of accidental fire, police had probable cause to arrest the plaintiff for arson).[4] Indeed, even without the fire marshal's assessment, the statements of McGill and Hernandez alone furnished sufficient probable cause for plaintiff's arrest.

Since probable cause existed on October 9th for plaintiff's arrest, plaintiff's false arrest claim fails. In addition, there is no evidence before me to suggest that this probable cause dissipated while plaintiff was in custody, which means that his malicious prosecution claim fails

---

[4] Plaintiff seems to suggest that if the fire marshals and police coerced him into confessing, that is independently actionable under § 1983. But I do not see how or why. Thus, his claims for false arrest and malicious prosecution fail independently of the allegedly coerced statements.

as well. And since plaintiff has failed to raise a material factual issue of fact as to whether defendants committed a constitutional tort, there can be no derivative state or federal claim for failure to intervene.

## CONCLUSION

Defendants' [22] motion for summary judgment is granted. The Clerk is directed to enter judgment, dismissing this case.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
      March 14, 2020